UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANNA MARIE FRETELUCO, | Case No. 2:19-cv-00759-JCM-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| SMITH'S FOOD AND DRUG CENTERS, INC., a foreign corporation; DOES 1-10; ROE CORPORAITONS 1-10; inclusive, | |
| Defendants. | |

Before the Court is Defendant's Emergency Motion for Rule 35 Neuropsychological Examination of Plaintiff.  ECF No. 40.  The Court has considered Defendant's Motion, Plaintiff's Opposition (ECF No. 42), Defendant's Reply (ECF No. 44), and Defendant's Addendum (ECF No. 45).  The Court finds as follows.

I.   **RELEVANT BACKGROUND**

On April 20, 2020, the parties appeared for a hearing on two motions filed by Defendant.  ECF No. 35.  The Court denied Defendant's Motion to Exclude Plaintiff's Future Damages (ECF No. 20), and granted in part and denied in part Defendant's Motion for Protective Order (ECF No. 25).  The Court reopened discovery for a period of 90 days for the limited purposes of allowing Defendant to retain rebuttal experts and conduct an independent medical exam of Plaintiff.  EFC No. 35.

Defendant has now retained a rebuttal expert, Dr. Lewis Etcoff, to conduct a neuropsychological examination of Plaintiff, which is set to take place in Dr. Etcoff's office on July 6 and 7, 2020.  Dr. Etcoff's curriculum vitae is attached to Defendant's Motion as Exhibit B (ECF No. 40-2).  There is no dispute that Dr. Etcoff is qualified to conduct the neuropsychological examination requested.  Instead, Defendant presents the issues as follows: "Plaintiff's attorney is insisting that he be allowed to have an observer present and record the examination, ostensibly under the provisions of NRS 52.380."  ECF No. 40 at 2.  Defendant does not object, and Dr. Etcoff has

agreed, to the audio recording of Plaintiff's clinical interview.  Thus, the audio recording of Plaintiff's clinical examination by Dr. Etcoff is not an issue the Court will address.

With respect to Plaintiff's request to have an observer present at her examination by Dr. Etcoff, the Court considers the following facts.  Dr. Etcoff has identified all testing he will administer in his examination of Plaintiff (*id*. at 4-5); Dr. Etcoff agrees not to administer any tests or conduct any procedures other than those disclosed to Plaintiff (*id*. at 6); and, Dr. Etcoff agrees to provide all raw data to Plaintiff from any tests conducted during her appointment.  *Id*.  Dr. Etcoff takes exception to having an observer present during his examination of Plaintiff.  Defendant avers that Plaintiff's general concern regarding Dr. Etcoff becoming "abusive" during the testing and/or exceeding the scope of the agreed upon examination is not justification for having an observer present.  *Id*.  Defendant states that NRS 52.380 is procedural in nature, not binding on the Court[,] and "that having an observer present during a neuropsychological examination alters the behavior and results of the examination."  *Id*. at 5-6; *see also* ECF No. 44 at 2-5.

In response, Plaintiff raises an issue not addressed by Defendant's Motion; that is, Plaintiff argues that Defendant's expert is retained not as a rebuttal to any expert Plaintiff retained, but as an initial expert because "Plaintiff has not retained a neuropsychologist."  ECF No. 42 at 4.  Plaintiff states that Defendants is "only permitted to obtain a neurologist and/or a psychiatrist as a rebuttal expert," and, because "Dr. Etcoff is a neuropsychologist, … [he] cannot rebut the opinions of Plaintiff's neurologist or psychiatrist."  *Id*. at 5.  Plaintiff also argues that Nevada's Rule of Evidence, NRS 52.380, provides a substantive right allowing Plaintiff to have an observer present during her Fed. R. Civ. P. 35 examination.  *Id*.  Plaintiff cites to testimony during a state legislative committee hearing, leading to adoption of NRS. 52.380, in which an individual testified that "this isn't just a procedural rule.  This is something substantive. … the right to control your own body."  *Id*.  Plaintiff argues that having an observer present during the examination will enhance "the court's, jury's, and parties' understanding of what transpired during a Rule 35 examination ... ."  *Id*. at 6.  Plaintiff claims polarization (whether conscious or unconscious) plays a role in the adversarial system and an observer will allow "additional insights that come from reviewing the communications and actions that are the foundation of the expert's opinion."  *Id.*  Plaintiff cites to a variety of states that allow

2

the presence of some type of observer in Rule 35 exams.  *Id.* at 9-10.  Plaintiff argues that Defendant's position is directly contrary to "the opinions of The American Board of Professional Neuropsychology, The American Psychological Association, and the courts that have routinely ordered the recording of examinations."  *Id.* at 12.  Plaintiff also argues Defendant attempts to mislead the Court because prior to 2018 Dr. Etcoff "always" allowed observers at examinations he conducted.  *Id.*  Plaintiff provides no cite for this contention; whereas, Dr. Etcoff's letter attached as Exhibit 2 to Plaintiff's Opposition states that he has allowed observers "on occasion."  ECF No. 42-2 at 2.[1]

Plaintiff further argues that Dr. Etcoff should be ordered to disclose not only all raw data from the testing conducted, but the test questions so that Plaintiff's expert may review the same. ECF No. 42 at 12.  In a somewhat self defeating argument, Plaintiff states that the tests Defendant's expert plans to administer are not protected by copyright and are not proprietary because "every test used by psychologists is easily available on the internet and shows these materials are available to the public and these test materials are therefore not highly secret."  *Id.* at 13.  Plaintiff cites to her Exhibit 3, which is a nine page list of various test names followed by websites on which the test questions related to the tests listed are apparently available.  ECF No. 42-3 at 2-10.  The source of this document is not provided by Plaintiff.

On Reply, Defendant states that Plaintiff fails to identify any federal case law or statute upon which the Court should rely to conclude NRS 52.380 is substantive rather than procedural. Defendant further argues that *Gensbauer v. May Dep't. Stores, Co.*, 184 F.R.D. 552 (E.D. Pa. 1999), on which Plaintiff relies, is easily distinguished because the *Gensbauer* decision distinguished between physical and psychological examination, finding that psychological examination "may depend more on unimpeded one-on-one communication between doctor and patient."  ECF No. 44

---

[1]      Plaintiff attaches 210 pages of documents as Exhibit 1 to her Opposition which is comprised of her Expert Disclosure and the curriculum vitaes of five experts.  Plaintiff also attaches a 2018 letter from Dr. Etcoff to the Clerk's Office of the Nevada Supreme Court in which he addresses proposed changes to Fed. R. Civ. P. 35 urging the committee not to allow audio or visual recordings or observers of psychological or neuropsychological tests.  ECF No. 42-2.  Dr. Etcoff's letter further states, as noted by Plaintiff, that he "allow[s] a noninvolved third party observer audiotaping and videotaping of my examinee interviews."  *Id.*  Dr. Etcoff goes on to state that he allows audio and video recordings "so as to accommodate the attorney and the discovery commissioner … ."  *Id.*  Finally, Dr. Etcoff states that "[o]n occasion, I have allowed an employee from the examiner's attorney's office to sit in on the interview."  *Id.*

at 4.  Defendant also states that "NRS 52.380 outlines the procedure for the presence of an observer at a mental or physical examination[] pursuant to NRCP 35."  *Id.*

With respect to the disclosure of test questions, Defendant states that "all of the proposed tests that may potentially be performed by Dr. Etcoff are standardized tests regularly used by neuropsychologists" and that "Plaintiff's neuropsychologist already has copies of the questions."  *Id.* at 5.[2]  Defendant reiterates that the tests are protected by copyright and examples of the copyright language from some of the tests will be provided, under seal, to the Court if the Court desires an *in-camera* review of the language.  *Id*. at 5-6.  Defendant subsequently submitted a declaration, referencing "Exhibit A" (not lodged with the Court) and quoting copyright language from each of eight tests Dr. Etcoff may administer to Plaintiff.  ECF No. 45 at 4-5.

**II.    DISCUSSION**

A.    NRS 52.380 Is A Rule Of Procedure, Not Substance, And No Observer May Attend Plaintiff's Rule 35 Examination By Dr. Etcoff.

*1.    NRS 52.380 is a Nevada Rule of Evidence*.

Chapter 52 of the Nevada Revised Statutes is titled "Documentary and Other Physical Evidence."  https://www.leg.state.nv.us/NRS/NRS-052.html.  Various sections under Chapter 52 bear the following titles: "Authentication and Identification;" "Presumption of Authenticity;" and, "Contents of Writings, Recordings and Photographs."  *Id*.  NRS 52.380 is the only statute under the title "Mental or Physical Examination."  *Id*.  This statute was added to Nevada's Documentary and Other Physical Evidence Chapter following the 2019 legislative session.  *See* NRS 52.380 reference stating  "(Added   to   NRS   by   2019,   966)."   https://www.leg.state.nv.us/NRS/NRS-052.html#NRS052Sec380.

*2.    The testimony at a legislative hearing cited by Plaintiff is not compelling*.

Plaintiff cites to, but does not attach to her Opposition a copy of the testimony on which she relies to argue that NRS 52.380 is a substantive rather than procedural rule.  However, the Court researched the testimony cited and found it was given by Graham Galloway, a named partner in a

---

[2]    The Court notes that Plaintiff retained a neurologist and psychiatrist, not a neuropsychologist.  ECF No. 42 at 4.

personal injury firm located in Reno, Nevada, representing the Nevada Justice Association.  Minutes of the Meeting of the Assembly Committee on Judiciary, 18th Sess. (March 27, 2019), at 2 and 3-4; http://gallowayjensen.com/.   The Nevada Justice Association website, states that it is "an organization of independent lawyers who represent consumers and share the common goal of improving the civil justice system." https://www.nevadajustice.org/index.cfm?pg=staff.

The Court also found that in response to Mr. Galloway's testimony, Dane A. Littlefield, President of the Association of Defense Counsel of Nevada, testified stating that the then-proposed changes to Nevada law were procedural not substantive: "This is why the plaintiffs' bar is trying to cast this proposed statute as affecting a substantive right rather than a procedural one; it is the only way they can try to get away from the Supreme Court's independent ability to draft and promulgate their own procedural rules.  The Supreme Court of Nevada has enacted a comprehensive set of rules dealing with discovery, the NRCP, which includes Rule 35." Meeting Minutes at 15.  The legislative history further shows that the Chairperson of the Assembly Judiciary Committee, Steve Yeager, confirmed that the language of the Assembly Bill, which became NRS 52.380, was proposed to and rejected by the Nevada Supreme Court; however, the participants in the March 27, 2019 hearing did not know why the proposal was rejected.  *Id.* at 7.  A review by the Court of the entirety of the Meeting Minutes shows that no legislator comments on whether NRS 52.380 is substantive or procedural.  *See id.*, generally.

The Court's analysis of whether NRS 52.380 is substantive or procedural is not compelled by Mr. Galloway's testimony or the testimony of Mr. Littlefield.  Given that one represents plaintiffs' personal injury lawyers, and the other represents defense lawyers, their perspectives were likely guided by particular points of view.  The Court therefore looks to the *Erie* doctrine to make its determination.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

> 3.  *Under the Erie Doctrine, federal law governs the procedures applicable to Plaintiff's Rule 35 examination by Dr. Etcoff.*

Under the *Erie* Doctrine, a federal court sitting in diversity must apply the substantive law of the forum state and federal procedural law.  *Id*. at 78.  "Classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor."  *Gasperini v. Center for*

5

*Humanities, Inc.*, 518 U.S. 415, 427 (1996) *citing Guaranty Trust Co. v. York*, 326 U.S. 99.

Moreover, as stated in *Gasperini*:

> Concerning matters covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic: It is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law. *See Hanna v. Plumer*, 380 U.S. 460, 469–474 (1965).

*Id*. n.7.  This analysis alone leads to the conclusion that Fed. R. Civ. P. 35 governs Plaintiff's examination by Dr. Etcoff.

Further, early interpretations "of *Erie,* propounded an "outcome-determination" test: '[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?'"  *Id*. at 427 *citing Guaranty Trust*, 326 U.S. at 109.  Twenty years after *Guaranty Trust* was decided, the Supreme Court explained that the "'outcome-determination' test must not be used to sweep in all manner of variations; instead, its application must be guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'"  *Garsperini*, 518 U.S. at 428 *citing* in *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

Applying these standards, the Court finds that whether an observer is present in the neuropsychological examination of Plaintiff is not substantive, but is procedural.  That is, NRS 52.380 sets forth procedures applicable to observers who may attend independent medical examinations.  Specifically, NRS 52.380 provides, in pertinent part, that "[a]n observer may attend an examination but shall not participate in or disrupt the examination;" the observer may be "[a]n attorney of an examinee or party producing the examinee … or … [a] designated representative;" an audio or stenographic recording of the examination may be made; and, that an examination may be suspended by either the observer or the examiner under certain conditions.  The statute also states that if an examination is suspended, "the party ordered to produce the examinee may move for a protective order pursuant to the Nevada Rules of Civil Procedure."  *Id*.

These statutory provisions are not "outcome" or case determinative, but instead reflect a "procedural preference."  *Flack v. Nutribullet, LLC*, 333 F.R.D. 508, 517 (C.D. Cal. 2019) *citing Smolko v. Unimark Lowboy Trans.*, 327 F.R.D. 59, 63 (M.D. Penn. 2918), and *Stefan v. Trinity*

*Trucking, L.L.C.*, 275 F.R.D. 248, 250 (N.D. Ohio 2011).  As stated in *Smolko*, "[b]y specifying that the court may determine 'the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it,' Fed. R. Civ. P. 35(a)(2)(B), Rule 35 consigns the procedures to be used in conducting these examinations to the sound discretion of the court, an approach that is consistent with the general guidance of the rules which provide that issues relating to the scope of discovery rest in the sound discretion of the [c]ourt."  327 F.R.D. at 61.  Further, directly addressing *Erie*, the court stated, "[j]udged against … [the outcome determinative] benchmark, Pennsylvania's Rule 4010, which permits counsel to attend physical and mental examinations, is not an outcome-determinative rule of substance which binds this court.  Rather, it is simply a procedural preference expressed by the state courts which does not control our exercise of discretion under Rule 35 of the Federal Rules of Civil Procedure."  *Id*. at 63.  This Court agrees.  NRS 52.380 sets forth process allowed under Nevada Rules of Evidence applicable to an examination under Nev. R. Civ. P. 35, and is not a substantive law the application of which overrides existing federal law found in Fed. R. Civ. P. 35(a)(2) that grants this Court the authority to enter an order specifying the "time, place, manner, conditions, and scope of the examination … ."  The Court further finds that presumptively applying Fed. R. Civ. P. 35 to all litigation in federal court will undoubtedly promote equitable administration of law while discouraging forum shopping.

> 4.   *Plaintiff fails to establish good cause for overcoming the majority rule that excludes third parties from Rule 35 examination.*

The Court agrees with the majority rule adopted by federal courts that exclude third parties from observing medical and psychiatric examinations.  *Flack*, 333 F.R.D. at 517 *citing Smolko*, 327 F.R.D. at 61 (*see* additional omitted citations from the District of South Carolina, District of Minnesota, the District of Colorado, and the Southern District).  The introduction of a third party "changes the nature of the proceeding, much in the way that television 'coverage' of events qualitatively changes what occurs in front of the camera."  *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y. 1994).

As stated in *Flack*:

> Courts are often reluctant to permit a third party or recording device out of concern that the intrusion would (1) potentially invalidate the examination results; (2) fail to provide a level playing field[] as plaintiff was not required to tape record his examinations with his own health care providers; and (3) inject a greater degree of the adversary process into an evaluation that is to be neutral.

333 F.R.D. at 518 (citations and internal quote marks omitted).  While Defendant agrees to allow the clinical examination by Dr. Etcoff to be audio recorded, and the Court will not interfere with that agreement, the remaining concerns summarized above accurately reflect why the Court finds that a third party should not be allowed to participate in this case.  The introduction of a third party is necessarily distracting to the examiner and the examinee, and clearly heightens an already adversarial process into one that is simply more so.  *See Smolko*, 327 F.R.D. at 61-62 (citation omitted).  In fact, as the court in *Smolko* stated, the presence of a third party introduces "a degree of artificiality to the examination that would be inconsistent with the applicable professional standard." *Id*. (internal citations and quote marks omitted).

Moreover, even if the Court were to adopt the middle road approach taken by some federal courts, which requires the party seeking to have an observer present at an examination to demonstrate "good cause for the request,"  Plaintiff fails to meet this standard.  *Id. citing Tarte v. United States*, 249 F.R.D. 856 (S.D. Fla. 2008); *Smolko*, 327 F.R.D. at 62 (same).  Evaluating the case before the Court and arguments made by Plaintiff, there is nothing extraordinary or out of the ordinary that suggests a third party observer is appropriate in this case.  There is nothing presented to the Court that supports a concern that Dr. Etcoff has ever been or, in this case, will be abusive to someone he is examining.  There is also nothing to support the conclusion that Dr. Etcoff will go beyond the agreed upon testing he has disclosed.  And, given that Defendant agrees to allow the new data to be produced and Dr. Etcoff's clinical evaluation of Plaintiff to be audio recorded, Plaintiff will have the evidence needed to make an appropriate motion for exclusion and/or sanctions should either event occur.

Based on the foregoing, Fed. R. Civ. P. 35 governs Plaintiff's independent medical exam. NRS 52.380 is not properly applied in this case.  The Court further finds that Plaintiff fails to provide the Court with any evidence or information, other than generic concerns, warranting an observer at

Plaintiff's Rule 35 examination.  For each and all of these reasons, the Court will not permit an observer to be present at Dr. Etcoff's examination of Plaintiff.

      B.    <u>Dr. Etcoff Is A Rebuttal Expert</u>.

Plaintiff's argument in support of the proposition that Dr. Etcoff is an initial rather than a rebuttal expert is as follows: (1) Plaintiff retained a neurologist and psychiatrist as experts not a neuropsychologist and, therefore, Defendant is "only permitted to obtain" rebuttal expertise from the exact same fields; (2) Plaintiff's experts did not conduct the tests Dr. Etcoff intends to conduct; and, (3) because Defendant's expert is a neuropsychologist, he "cannot rebut the opinions of Plaintiff's neurologist or psychiatrist."  ECF No. 42 at 4-5.  Plaintiff cites no law for these propositions and the Court could find none that support Plaintiff's conclusions.

Fed. R. Civ. P. 26(a)(2)(D)(ii) allows for the admission of rebuttal experts "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert.  To this end, Plaintiff's unsupported opinion that a neuropsychologist cannot rebut the opinions of a neurologist and psychiatrist is unpersuasive.  The fact that Plaintiff's initial experts did not do testing is not a basis to exclude Defendant's expert because he is allegedly not rebutting conclusions reached by the opposing party's experts.  In fact, "[s]trict adherence to a rule" that would require a rebuttal expert to rely solely on material used by an initial, opposing expert "is inadvisable."  *Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, Case No. CV 11-08120 JVS(FMOx), 2012 WL 12930456, at *3 (C.D. Cal. Nov. 9, 2012).  Further "regardless of whether it could have been included in the expert's initial report, rebuttal expert opinion is proper where it 'explains, repels, counteracts or disproves evidence of the adverse party."  *Id.* citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006).

Further, as evidenced by the discussion in *Van Alfen* regarding certain rebuttal expert opinions defendant sought to strike, Plaintiff's request to strike is premature.  Until Dr. Etcoff issues a report, it is not reasonably possible to know whether his opinions will be ones that rebut Plaintiff's experts' opinions or if Dr. Etcoff's opinions will be more properly labeled as initial expert opinions and, therefore, outside the scope of what the Court ordered on April 20, 2020 (ECF No. 35).  If upon receipt of Dr. Etcoff's report Plaintiff believes Dr. Etcoff's opinions are not rebuttal opinions, but

1      initial expert opinions, then Plaintiff may move to strike Dr. Etcoff's report.  *See Donell v. Fidelity*

2      *National Title Agency of Nevada*, Case No. 2:07-cv-00001-KJD-PAL, 2012 WL 170990, at *3 (D.

3      Nev. Jan. 20, 2012); *Linder v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawai'i 2008).

4           For each of these reasons, Plaintiff's Opposition arguing that Defendant's Motion must be

5      denied because Dr. Etcoff is not a rebuttal expert is unavailing.

6           C.     <u>Test Questions Need Not Be Disclosed By Dr. Etcoff.</u>

7           Plaintiff contends that despite recording Dr. Etcoff's examination of Plaintiff and receiving

8      all raw data from the examination, Dr. Etcoff must produce the test questions for each applicable

9      test to be administered.  Plaintiff states the "test questions are not proprietary" and, more importantly,

10     provides a list of websites on which test question for each of the tests to be used are available.  ECF

11     No. 42 at 13; Exhibit 42-3.  Plaintiff confirms the "materials are available on the internet to the entire

12     public," but asks the Court to require Dr. Etcoff to produce the test questions to which Plaintiff and

13     her expert, apparently, already have access.  Defendant agrees that Plaintiff's experts already have

14     the questions Plaintiff will be asked, and further argue that Dr. Etcoff is precluded from producing

15     these by copyright law.  ECF No. 44 at 5; *see also* ECF No. 45.

16          In a related case, but not exactly on point, the U.S. District Court for the Western District of

17     North Carolina discussed a Rule 45 subpoena to a psychologist that sought production of

18     psychological tests, test results, test scores, and notes made by examiners.  *Collins v. TIAA-CREF*,

19     Case No. 3:06CV304-C, 2008 WL 3981462, at **3-5 (W.D. N.C. Aug. 22, 2008).  Citing to the

20     ethical guidelines propounded by the American Psychological Association ("APA"), the court noted

21     that the subpoenaed doctor is allowed "to release test data to qualified professionals such as other

22     psychologists." *Id.* at *3.  The Court in *Collins* also noted the subpoenaed doctor's concern that

23     disclosing "raw testing materials to anyone other than a licensed psychologist" would result in

24     violation of copyright laws. *Id.*  Ultimately, the Court granted the Motion to Quash "to the extent"

25     the opposing party resisted "full disclosure of the materials" requested. *Id.* at 5.

26          In *Taylor v. Erna*, Case No. 08-10534-DPW, 2009 WL 2425839, at *2 (D. Mass. Aug. 3,

27     2009), another similar case, the court stated: "Some courts have ruled that, regardless of APA Ethical

28     Guidelines and experts' concerns, Fed. R. Civ. P. 26 is clear in its requirement of full disclosure

without qualification." (Internal citations omitted.)  The court went on to note that "[o]ther courts have been more deferential to the position of psychologists who express concern about restrictions of the APA Ethical Code."  *Id*. (citation omitted).  Ultimately, the court in *Taylor* compromised, as some courts do, and ordered production of testing material pursuant to a protective order.  *Id*. at 3.

Here, a logical solution arises.  First, Plaintiff states that her experts already have access to the testing material they seek from Defendant's rebuttal expert.  ECF Nos. 42 at 13, and 42-3.  To this end, there seems to be no need for Dr. Etcoff to produce the materials requested.  However, in case Plaintiff's expert does not have access to all testing material, the Court will require Plaintiff to ask her psychiatric expert what testing material he needs.  Plaintiff's psychiatric expert is to provide the answer to this question on his/her own letterhead.  That letter shall be delivered to Defense Counsel by electronic and regular U.S. mail.  If Plaintiff's expert does not have access to all or some of the testing material, Defendant shall draft a simple protective order pertaining to the disclosure of the needed testing material, to be entered by the Court.  The materials are to be used for no purpose other than review by Plaintiff's psychiatric expert in the course of providing expert opinions in this dispute.  The testing materials are not to be filed with the Court unless done under seal.  If discussed in a deposition, the materials are to be sealed.

**III.   ORDER**

Accordingly,

IT IS HEREBY ORDERED that Defendant Smith's Food & Drug Centers, Inc.'s Emergency Motion for Rule 35 Neuropsychological Examination of Plaintiff (ECF No. 40) is GRANTED.  The clinical examination shall be audio recorded and the audio recording shall be made promptly available to Plaintiff's counsel and Plaintiff's experts for review.

IT IS FURTHER ORDERED that Plaintiff's request that an observer be present at the Rule 35 examination is denied.

IT IS FURTHER ORDERED that Plaintiff's request to strike Defendant's rebuttal expert is denied as premature.

IT IS FURTHER ORDERED that Plaintiff's psychiatric expert shall prepare a letter, on the expert's professional letterhead, identifying to which tests Plaintiff's expert has access.

IT IS FURTHER ORDERED that if Plaintiff's expert does not have access to all testing material, counsel for Defendant shall prepare a protective order, to be submitted to the Court, that will allow disclosure of such material to Plaintiff's counsel and psychiatric expert only.

IT IS FURTHER ORDERED that the audio recording of Plaintiff's Rule 35 examination and raw test result data shall be used solely for purposes of prosecuting or defending this action and shall not be otherwise disclosed except to the parties' respective counsel, those in counsels' respective offices who are assisting primary counsel in this matter, and to the parties' respective experts. Each person in the respective counsel offices to whom the audio recording or test data is disclosed shall be informed that unauthorized disclosure of this material will be a violation of this Order and shall subject such individual to potential sanctions. The audio recording and test data are not to be made available to the general public for any purpose.

IT IS FURTHER ORDERED that if the parties need or seek clarification of this Order, they shall contact Chambers to request a hearing before the Court.

DATED this 29th day of June, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE