UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| ANNA MARIE FRETELUCO, | Case No. 2:19-cv-00759-JCM-EJY |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| SMITH'S FOOD AND DRUG CENTERS, INC., a foreign corporation; DOES 1-10; ROE CORPORAITONS 1-10; inclusive, | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion to Strike/Exclude Defendant's Rebuttal Expert Mark L. Winkler, MD (ECF No. 48).[1] The Court has considered Plaintiff's Motion, Defendant's Response (ECF No. 51), and Plaintiff's Reply (ECF No. 55).

**I.  Background**

Relevant to the instant Motion are two timely produced expert reports submitted by Plaintiff. The reports were prepared by Drs. Garber and Filler. Dr. Garber was disclosed as a "retained treating expert" who Plaintiff states "is expected to give expert opinions regarding the treatment of Plaintiff, the necessity of treatment rendered, the causation of the necessity for past and future medical treatment, [and] his expert opinion as to past and future restrictions of activities, including work activities, caused by the fall." ECF No. 48-1 at 4. Plaintiff further states that Dr. Garber's opinions "shall include the cost of past and future medical care and whether those medical costs fall within the ordinary and customary charges for similar medical care and treatment. His testimony may also

---

[1] The Court notes that ECF No. 48 is a total of 363 pages long. However, Plaintiff did not file this document, or other of her filings discussed in this case, in a PDF searchable format as required by Local Rule. LR IC 2-2, titled "Filer Responsibilities When Electronically Filing Documents," states in section (a)(1) "To be filed in the electronic filing system, all documents must be in a searchable Portable Document Format (PDF), except that exhibits and attachments to a filed document that cannot be imaged in a searchable format may be scanned." There is also no index to Plaintiff's numerous exhibits and exhibits to those exhibits. This violates Local Rule LR IA 10-3(d), which states: "An index of exhibits must be provided." The Court strongly encourages Plaintiff to become familiar with and follow these Local Rules.

include expert opinions as to whether Plaintiff has a diminished work life expectancy, work capacity, and/or life expectancy as a result of the fall." *Id*. at 4-5.

Dr. Filler was disclosed by Plaintiff as a "retained treating expert" who "is expected to give expert opinions regarding the treatment of Plaintiff, the necessity of the treatment rendered, the causation of the necessity for past and future medical treatment, [and] his expert opinion as to past and future restrictions of activities, including work activities, caused by the fall." *Id*. at 7. Plaintiff further states that Dr. Filler's opinions "shall include the cost of past and future medical care and whether those medical costs fall within the ordinary and customary charges for similar medical care and treatment. His testimony may also include expert opinions as to whether Plaintiff has a diminished work life expectancy, work capacity, and/or life expectancy as a result of the fall." *Id*.

Plaintiff argues that Dr. Winkler should be excluded as a rebuttal expert for two reasons. First, Plaintiff contends that Dr. Winkler should be excluded to the extent his opinions do not rebut Dr. Garber or Dr. Filler's opinions. ECF No. 48 at 10-11. Second, Plaintiff contends that Dr. Winkler should be excluded under the 1993 standard established in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). With respect to the first basis for excluding Dr. Winker, Plaintiff states that "all of Dr. Winker's opinions—except those on the MRI with DTI[2]—are initial opinions, not rebuttal ones." *Id*. at 10. Plaintiff argues that neither Dr. Garber nor Dr. Filler "reviewed" or "interpreted" Plaintiff's radiological films whereas Dr. Winkler did. *Id*. Plaintiff further argues that neither Drs. Garber nor Filler "offered opinions on the accuracy of the diagnostic reports"; nor did they opine that Plaintiff's "radiology films showed traumatic abnormalities attributable to … [Plaintiff's] fall," but Dr. Winkler did. *Id*. Plaintiff closes this argument by stating that "neither Dr. Garber nor Dr. Filler opined that … [Plaintiff] needed surgery"; whereas, Dr. Winkler "was the first to bring up" this topic. *Id.* Plaintiff concludes that Dr. Winkler's opinions go "far beyond the scope of Dr. Garber and Dr. Filler's reports" and therefore are not rebuttal opinions, but initial opinions that must be struck. *Id*. at 11.[3]

---

[2]   "DTI" is an abbreviation for Diffusion Tensor Imaging.
[3]   The Court could not locate any discussion of surgery in Dr. Winkler's Expert Report. ECF No. 55-3. To the extent this is contained in the report, but not located by the Court, the Court grants Plaintiff's Motion to Strike/Exclude as the Court found no opinion regarding surgery expressed by Drs. Garber or Filler.

2

With respect to Plaintiff's *Daubert* argument, Plaintiff contends that "Dr. Winkler knows he is not qualified to offer spine surgery opinions" based on a deposition Dr. Winkler gave in an unrelated matter. *Id*. at 13-14. In a single paragraph, Plaintiff further contends and concludes that Dr. Winkler is "not qualified to interpret[] radiology images to diagnose injury and diseases" because he is a "normal radiologist" and not an interventional radiologist. *Id*. at 14. Plaintiff next argues that Dr. Winkler's opinion regarding DTI testing has "no scientific backing," is "flat wrong," and therefore must be excluded. *Id*. Plaintiff cites to many documents in an effort to demonstrate that DTI is generally accepted in the medical community, is FDA approved, is reliable and admissible as determined by courts across the country, and the methodology has been subjected to peer review and publication. *Id*. at 15-16. Finally, Plaintiff argues that Dr. Winkler's opinions regarding the reasonableness of radiology billing must be excluded because it violates the collateral source rule.

Defendant responds arguing that: (1) Plaintiff made late and unsupported disclosures of estimated future medical expenses, that have never been adequately explained or justified (ECF No. 51 at 3, 4, 6-7); (2) Plaintiff identified four medical experts including Dr. Milford (a "non-retained expert"), Dr. Garber (a retained treating expert), Dr. Filler (a retained treating expert), and Dr. Roitman (a retained medical expert) (ECF No. 48-1 at 4, 7, and 15); (3) Plaintiff "fought the proposed" independent medical examination of Plaintiff (ECF No. 51 at 4); and (4) Plaintiff made five supplemental disclosures after December 2019 when she disclosed future damages for the first time (*id*. at 4-5).

Defendant states that Plaintiff's failure to explain the basis for her future damages claim resulted in Defendant spending "thousands of dollars to have experts review evidence and try to determine what, if any, of Plaintiff's problems are causally related to the accident" underlying this dispute. *Id*. at 7.[4] Plaintiff states it is not Dr. Winkler who is not a proper rebuttal expert because he "advance[s] new arguments or new evidence"; rather, "it is Plaintiff who has never properly disclosed information about her future damages." *Id*. Defendant also explains to the Court the

---

[4] Defendant accurately states that the Court denied Defendant's attempt to strike Plaintiff's future damages. What it appears Defendant did not do is seek to compel Plaintiff to provide more thorough answers to interrogatories or document requests in an effort to understand the basis for those damages. *See* ECF No. 20 and docket generally.

difficulty it had obtaining radiology films from Plaintiff's health care providers (*id*. at 7-8), and that any objection to the timing of Dr. Winkler's report is not well taken. *Id*. at 8-9.

Defendant argues that "Dr. Winkler directly rebuts the future medical treatment claims and the uncertain and non-specific allegations made by Plaintiff." *Id*. at 9. Defendant then discusses alleged inadequate descriptions of expected testimony from Plaintiff's expert (an issue not presented in a motion by Defendant), raising, again, Plaintiff's ill-described, unspecified, and uncertain future medical treatment. *Id*. at 9-10. Defendant concludes its argument in opposition to Plaintiff's contention that Dr. Winkler is not a proper rebuttal expert by stating:

> Defendant has also chosen to rebut the evidence of Plaintiff's four designated experts that "all of the past and future medical care provided to Plaintiff was reasonable and necessary …" by, among other things, having Dr. Winkler review all of the radiology studies available to determine whether there is any evidence that the accident … caused any injury to either Plaintiff's brain or her spine. Dr. Winkler has concluded that "[t]here is no objective imaging evidence of traumatic brain injury due to the accident" and that the radiological studies only indicate "temporary clinical exacerbation" of Plaintiff's cervical and lumbar spine.

*Id*. at 11 (internal citations omitted).

With respect to Plaintiff's *Daubert* argument, Defendant contends that the standard the Court should apply to determine whether to strike Dr. Winkler's opinions "should not rest on his disagreement with certain methodology, … but rather, if Dr. Winkler's opinions and conclusions withstand the factors set forth in *Daubert*." *Id*. at 12. Defendant then summarizes Dr. Winkler's education and experience, concluding that "Dr. Winkler has the requisite training, experience, and specialized knowledge to testify as a medical expert in this case." *Id*. at 13. Discussing the Court's "gatekeeping" role identified in *Daubert*, Defendant contends that: (1) Plaintiff's reliance on the Southern District of Florida decision in *Marsh v. Celebrity Cruises, Inc.*, Case No. 1:17-cv-21097-UU, 2017 WL 6987718 (S.D. Fla. Dec. 15, 2017) is misplaced and distinguishable; (2) Dr. Winkler's opinion is supported by well-recognized authorities; (3) Dr. Winkler's testimony will assist the jury to understand "the accuracy of any perceived connection between the DTI results and Plaintiff's alleged TBI, or the weight they should afford such testimony"; and, (4) the probative value of Dr. Winkler's testimony is "derived from his exhaustive review of Plaintiff's medical records, imaging

4

studies, and expert reports" thereby outweighing "any potential under prejudice or danger of jury confusion." *Id*. at 14-15.

On Reply, Plaintiff begins by arguing that Defendant does not dispute that Dr. Winkler has no surgical training and is not an interventional radiologist and, therefore, his opinions that Plaintiff will not need spine surgery and regarding causation (his "findings" after review of Plaintiff's films regarding pre-existing condition) must be excluded" under *Daubert*. ECF No. 55 at 2-3. Plaintiff (1) reiterates that Dr. Winkler's opinion regarding DTI must be excluded because he is wrong as "DTI passes the *Daubert* standard," (2) states that Dr. Winkler's opinions are otherwise "contradicted by generally accepted practices in the medical community," and (3) closes this section of the Reply reiterating that Dr. Winkler's opinion regarding the reasonableness of radiology billing violates the collateral source rule. *Id*. at 3-5.[5]

Plaintiff then makes a new argument seeking to strike Dr. Winkler's supplemental report arguing that "an expert cannot add to his opinions in opposing a *Daubert* motion." *Id*. at 6. Plaintiff explains that on the same day Plaintiff's counsel called Defendant's counsel "about a motion to exclude Dr. Winkler, … Defense served a supplemental rebuttal report from Dr. Winkler." *Id*. Plaintiff then cut and pasted a significant portion of Dr. Winkler's supplemental report into her Reply, concluding, in a half page, that the supplemental report should be excluded because "no new evidence emerged" and Dr. Winkler should not be permitted to "beef … up" his initial report after determining the initial report was inadequate. *Id*. at 6-9.

**II.   Discussion**

    A.    <u>The Law Pertaining to Retained and Non-Retained Experts</u>.

Federal Rule of Civil Procedure 26(a)(2)(B) and (C) delineate the requirements for retained and non-retained experts. Rule 26(a)(2)(B) plainly state that "[u]nless otherwise stipulated or

---

[5] "The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff *receives* from sources of compensation that are independent of (or collateral to) the tortfeasor." *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994) (emphasis added); *accord Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1134 (9th Cir. 2003). Dr. Winkler does not attempt to reduce Plaintiff's damages by amounts *received* independent of Defendant, Rather, Dr. Winkler refers to sources of medical billing such as Medicare and United Healthcare for purposes of arguing the reasonableness of the charges for various procedures such as an MRI. ECF No. 55-3 at 12. The collateral source rule is inapplicable to Dr. Winkler's opinion.

5

ordered by the court, … if the witness is one retained or specially employed to provide expert testimony" the witness must prepare and sign a written report that includes: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."  In comparison, if a witness is not specifically retained to provide expert testimony, such as a treating physician, but is still offered by a party to present expert testimony, the witness need not provide a written report, but the party who intends to present the witness must make a disclosure that includes: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

Rule 26(a)(2)(C) was "added to mandate summary disclosures of the opinions to be offered by the expert . . . and . . . the facts supporting those opinions." *Flonnes v. Property & Cas. Ins. Co. of Hartford*, Case No. 2:12-cv-01065-APG, 2013 WL 2285224, at *2 (D. Nev. May 22, 2013) (citation and internal quote marks omitted).  As explained in *Flonnes*, "a summary is ordinarily understood to be an abstract, abridgement, or compendium." *Id.* at *3 (citation omitted).  As stated in *Alfaro v. D. Las Vegas Inc.*, Case No. 2:15-cv-02190-MMD-PAL, 2016 WL 4473421, at *11 (D. Nev. Aug. 24, 2016), "[a] treating physician is still a percipient witness of the treatment rendered and may testify as a fact witness and also provide expert testimony under Federal Evidence Rules 702, 703, and 705.  However, with respect to expert opinions offered, a Rule 26(a)(2)(C) disclosure is now required."  Further, "'when a treating physician is transformed into an expert offering testimony on matters beyond the treatment rendered for purposes of Rule 26 disclosures,' a report is required." *Langermann v. Property & Cas. Ins. Co. of Hartford*, Case No. 2:14-cv-00982-RCJ-PAL, 2015 WL 4724512, at *3 (D. Nev. Aug. 10. 20145) *citing Goodman v. Staples, The Office Superstore*, 644 F.3d 817, 825-26 (9th Cir. 2011).  A plaintiff's "boilerplate conclusory description

of their anticipated testimony [of a non-retained treating physician expert] is woefully inadequate." *Langermann*, 2015 WL 4724512, at *5.

When an expert is offered to rebut the testimony of either a retained or non-retained medical expert, the "rebuttal opinion is limited to contradicting or rebutting an opinion set forth in the opponent's initial expert disclosure. … The phrase 'same subject matter' should not be read broadly, because if it were to encompass any possible topic that relates to the subject matter at issue, such interpretation will blur the distinction between affirmative expert and rebuttal expert and have unjust results." *Taylor v. Northern Inyo Hospital*, Case No. 1:15-cv-001607-LJO-JLT, 2017 WL 1273840, at *3 (E.D. Cal. Feb. 17, 2017) (internal citations and quote marks omitted). As stated in *Tuuamalemalo v. Las Vegas Metropolitan Police Dep't.*, Case No. 2:16-cv-00619-JAD-VCF, 2017 WL 1550235, at *1 (D. Nev. Apr. 28, 2017):

> Federal Rule of Civil Procedure 26(a)(2)(D)(ii) governs the content of rebuttal experts and states that a rebuttal expert's testimony is limited to testimony that "contradict[s]" or "rebut[s]" evidence on the same subject matter identified by another party.[] … This means that an expert's rebuttal testimony may not introduce new, alternative or previously unconsidered theories. *See United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir.), *cert. denied*, 446 U.S. 939 (1980) ("'The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party,' and the decision to admit rebuttal testimony 'is entrusted to the sound discretion of the district court.'"); *see also In re Piasecki*, 745 F.2d 1468, 1472 (Fed. Cir. 1984) (stating that rebuttal expert reports must include "a showing of facts supporting the opposite conclusion"). Rebuttal testimony must address the same subject matter and refute the previous expert's conclusions regarding that subject matter.

(Some internal citations omitted.)

Thus, an expert report "may not advance new arguments for the first time in a reply expert report." *Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 591 (N.D. Ill. 2015) (internal citation omitted). Such reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Helios Software, LLC v. SpectorSoft Corp.*, Case No. 12-081-LPS, 2014 WL 4796111, at *3 (D. Del. Sept. 18, 2014) (internal citations omitted); *see also Kleen Prods. LLC*, 305 F.R.D. at 591 (where reply report's additional analysis was in direct response to criticisms from opposing expert and provided further support for original opinions, the reply report was admissible). Moreover, consistent with *Kleen Prods., LLC*, this Court previously stated:

> The fact that Plaintiff's initial experts did not do testing is not a basis to exclude Defendant's expert because he is allegedly not rebutting conclusions reached by the opposing party's experts. In fact, "[s]trict adherence to a rule" that would require a rebuttal expert to rely solely on material used by an initial, opposing expert "is inadvisable." *Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, Case No. CV 11-08120 JVS(FMOx), 2012 WL 12930456, at *3 (C.D. Cal. Nov. 9, 2012). Further "regardless of whether it could have been included in the expert's initial report, rebuttal expert opinion is proper where it 'explains, repels, counteracts or disproves evidence of the adverse party." *Id. citing Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006).

ECF No. 46 at 9.

B.  Supplementation of Expert Reports.

Rule 26(e) obligates parties to supplement an initial expert report served pursuant to Rule 26(a) when the party learns that the disclosure or response is incomplete or incorrect. "A party may not, however, use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report." *Abila v. United States of America*, Case No. 2:09-cv-1345-KJD-LRL, 2011 WL 1447618, at *2 (D. Nev. Apr. 14, 2011). "[A]n expert's duty to supplement under Rule 26(e) is not a right to supplement at will." *Allstate Insurance Co. v. Balle*, Case No. No. 2:10-cv-02205-APG-NJK, 2013 WL 5797848, at *2 (D. Nev. Oct. 28, 2013).

"The time for supplementation is not limited to the discovery period." *Burger v. Excel Contractors, Inc.*, Case No. 2:12-cr-01634-APG-CWH, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013). Rule 26(e)(2) requires supplementation of expert reports to occur "by the time the party's pretrial disclosures under Rule 26(a)(3) are due," which is 30 days before trial unless otherwise ordered by the Court. *Abila*, 2011 WL 1447618, at *2.

C.  Daubert and Admissibility of Expert Opinions.

The Court starts this discussion with the U.S. Supreme Court decision in *Daubert*, which drew on Fed. R. Evid. 702, to establish a flexible test examining the "reliability" and "fit" of the offered expert testimony to the case at hand. *See* 509 U.S. at 589-92. Reliability looks at "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93. This inquiry, in turn, requires the court to analyze four factors including: (1) whether the theory can be and has been tested; (2) whether the theory has been peer reviewed and published; (3) what the

8

theory's known or potential error rate is; and, (4) whether the theory enjoys general acceptance in the applicable scientific community. *Id.* at 593-94. The Supreme Court emphasized that the factors are not "a definitive checklist or test" and that the reliability analysis remains a malleable one tied to the facts of each case. *Id.* at 591, 593.

After *Daubert*, the Ninth Circuit explained that the reliability factors are not "equally applicable (or applicable at all) in every case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Applicability "depend[s] … on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1998) (citation omitted). A district court may permissibly choose not to examine factors that are not "reasonable measures of reliability in a particular case." *Id.* at 153.

Because the reliability inquiry is fluid and contextual, district courts are vested with "broad latitude" to "decid[e] *how* to test an expert's reliability" and "*whether or not* [an] expert's relevant testimony is reliable." *Id.* at 152-53 (emphasis in original). District judges play an active and important role as gatekeepers examining the full picture of an expert's methodology, preventing shoddy expert testimony and junk science from reaching a jury. *Daubert*, 509 U.S. at 595-97; *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citing *Daubert*, 509 U.S. at 597) ("the district court must perform a 'gatekeeping role' [to] ensur[e] that the testimony is both 'relevant' and 'reliable.'"). This gatekeeping obligation "applies to all (not just scientific) expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (citing *Kumho Tire*, 526 U.S. at 147).

D.   Plaintiff's challenges to Dr. Winkler.

Dr. Winkler's Expert Report (ECF No. 55-3) begins with two statements summarized as (1) Plaintiff has a history of concussions, and (2) there is no documentation supporting that Plaintiff suffered a "head trauma, loss of consciousness, alteration of consciousness, or neurological deficit

due to the accident of 7-7-17." *Id.* at 5.[6] These statements rebut opinions expressed by Plaintiff's experts and therefore are not struck.

With respect to each of Dr. Winkler's alleged "new/additional findings," Plaintiff points to radiological reports as opposed to the expert reports that Dr. Winkler was retained to rebut. Dr. Garber, unlike the radiology reports, discusses an October 10, 2019 doctor's visit by Plaintiff to Dr. Garber. In that discussion, Dr. Garber states, *inter alia*:

- Patient presented after sustaining a slip and fall accident while at Smith's roughly 3-1/2 years ago;
- She struck her head and since that time had headaches, axial mechanical neck pain, and lower back pain with intermittent upper and lower extremity radiculopathies.
- MRI of the cervical spine reveald [sic] a disc herniation at C6-C7 with foraminal narrowing. MRI of the lumbar spine revealed [sic] what appeared to be disc herniation L4-L5. She was recommended a C6-C7 and L4-L5 transforaminal injections and x-rays of cervical and lumbar spine."

ECF No. 48-1 at 52. Dr. Winkler's opinions regarding Plaintiff's alleged disc herniations rebut the opinions expressed by Dr. Garber and, thus, are not struck.

Dr. Garber's expert report also indicates that he did a Diagnostic and Testing Review. *Id.* at 54. Dr. Garber then summarizes what he reviewed stating that the summary "does not *necessarily*" represent his interpretation of the images. *Id.* (emphasis added). The list of Dr. Garber's review appears to match the content (albeit not always the dates) of Dr. Winkler's report. *Compare id.* at 54-55 to EFC 55-3 at 5-8. Dr. Garber concludes: "Based upon the medical records provided to me,

---

[6] Plaintiff complains that Dr. Winkler's Supplement to his expert report, dated August 20, 2020 but disclosed on September 18, 2020, was issued in response to a conversation between counsel for the parties in which Plaintiff's counsel called Defendant's counsel "about a motion to exclude Dr. Winkler." ECF No. 55 at 6. Plaintiff further alleges that in response to the call, and on the very same day, Dr. Winkler was able to add four new pages of opinions to his discussion of DTI testing. *Id.* Defendant did not have an opportunity to respond to these arguments made in Plaintiff's Reply brief. Nonetheless, other than Plaintiff's belief that this occurred, there is nothing before the Court to support the contention raised. As stated above, the Rule allowing for supplementation of an expert report does not allow for "at will" supplementation, and a party may not use supplementation to sandbag an opponent. However, the timing of Dr. Winkler's disclosure did not prejudice or sandbag Plaintiff. In fact, prejudice is not argued by Plaintiff. No trial date has been set in this matter, and Plaintiff does not indicate she sought to and did depose Dr. Winkler before the supplementation was provided. Moreover, much like Plaintiff now complains about Defendant, Plaintiff produced a rebuttal report to Defendant's rebuttal expert report, which is not allowed by Rule 26 or any case law the Court could locate. *See* ECF No. 51-4 at 2 (stating Dr. Roitman, Plaintiff's expert, "will organize … [his] correspondence in accordance with several points during my review of Dr. Etcoff's rebuttal."). Given this history and overall posture of this case, as well as the fact that depositions of expert witnesses can proceed if stipulated to by the parties, the Court declines to strike Dr. Winkler's Supplemental Expert Report as prejudicial, sandbagging or otherwise inappropriate.

the patient has no past medical history of any spinal disorders." ECF No. 48-1 at 55. Dr. Garber also stated an expert opinion, based on the information provided to him, that Plaintiff has "symptoms consistent with a post-concussive syndrome" and, that Plaintiff "sustained a closed head injury, or brain injury," and suffers from "cervical and lumbar symptomology that also stems from the slip and fall accident" at Smith's. *Id*. at 59. Dr. Garber states again, it is his "expert opinion … that the patient sustained a brain injury as well as *cervical and lumbar spine injuries necessitating treatment as a result of the 07/07/2017 accident." Id*. (emphasis added).

Dr. Winkler opines that there is no anatomic abnormality which could be attributed to the accident of 7-7-17." ECF No. 48-4 at 7-9. Dr. Winkler also opines that "[t]here is no objective imaging evidence of a traumatic brain injury." *Id*. These statements, based upon Dr. Winkler's review of the same records reviewed by Dr. Garber, are sufficiently related to the contents of and opinions expressed in Dr. Garber's report to qualify as rebuttal. That is, Dr. Winkler explains and attempts to disprove evidence offered by Plaintiff, the adverse party.

As stated above, the Court has substantial discretion with respect to whether striking an expert is called for. *Kumho Tire Co.*, 526 U.S. at 141-142. And, while the Court may exclude Dr. Winkler, it is clear from case law that doing so is not always the appropriate remedy. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)); *see also Dorn v. Burlington Northern Santa Fe Railroad Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005). Based upon the Court's analysis of the above opinions expressed by Dr. Winkler with respect to whether objective imaging evidences a traumatic brain injury or anatomic abnormality that is attributable to Plaintiff's July 2017 accident at Smith's, the Court finds these are rebuttal opinions offered in response to Dr. Garber's opinions that may be challenged on cross examination. These opinions are not excluded.

Plaintiff further contends that Dr. Winkler is not qualified to offer testimony on causation because he is a radiologist, not an interventional radiologist. ECF No. 48 at 14. Plaintiff offers no citations for this proposition and the Court could find none. Plaintiff fails to convince the Court that striking Dr. Winkler on the sole basis of his board certification in radiology, given Dr. Winkler's

subsequent training and substantial experience, is insufficient to qualify him to testify to causation. This area of inquiry is better left to vigorous cross examination by Plaintiff in deposition and trial.

Finally, the Court considers Plaintiff's contention that Dr. Winkler's opinion regarding DTI must be struck because his rebuttal opinions "have no scientific backing, and are flat wrong … ." *Id*. A review of Dr. Winkler's opinions demonstrate that he cites to the American College of Radiology and the American Society of Neuroradiology at Wintermark JACR Feb 2015, Wintermark AJNR Feb 2015. ECF No. 55-3 at 10. Dr. Winkler also refers to Dr. Nandor Pinter, Director of Neuroimaging Research at the Dent Neurologic Institute, who is alleged to have stated in August 2020 that "there is absolutely no evidence that DTI can be used for clinical decision making in TBI/mTBI. On the contrary, there is plenty of evidence that DTI is unreliable for this use. …" *Id*. Dr. Winkler then cites to Dr. Andrew Schweitzer, from Weill Cornell, who is alleged to have written in Radiographics October 2019, that an "accurate and meaningful interpretation of individual DTI examinations is not feasible." *Id*. Finally, Dr. Winkler cites to Dr. Michael Brant-Zawadski, Medical Director and Endowed Chair at the Pickup Family Neurosciences Institute at Hoag Hospital, who is alleged to have stated in August 2020 "that this research technique is highly technically challenging, and requires groups of individuals to be compared to others in order to make any definitive statement about the difference between the two groups. It is not meant to be used in the clinical setting, certainly at the level of an individual patient diagnosis." *Id*. at 10-11.

Applying the four factors identified in *Daubert*, the Court finds that it is clear that DTI can be and has been tested, peer reviewed and published, and that there is a debate about whether DTI is generally accepted in the medical community for purposes of diagnosing traumatic brain injuries in individuals. Plaintiff fails to demonstrate that Dr. Winkler's expert opinion regarding DTI is itself junk science. The Court does not weigh expert testimony to determine who provides a better supported or more robust opinion. The district court must screen out "unreliable nonsense opinions," but the jury may hear and weigh expert opinions that are impeachable. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir.), *cert. denied*, 574 U.S. 1060 (2014). In other words, the district court does not determine whether the expert is right or wrong, but whether the testimony would be helpful. *Id.*

The Court finds that all of these witnesses are accomplished experts are well-qualified, and their opinions will be of assistance to the jury. Whether certain opinions are more suspect than others goes to the weight of the testimony not to its admissibility. *Datalex (Ireland) Ltd. v. PSA, Inc.*, Case No. CV 01-06482 DDP (VBKx), 2003 WL 25667620, at *4 (C.D. Cal. 2003) *citing Kennedy v.. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir.1998). Plaintiff will have an opportunity to challenge Dr. Winkler's analysis and opinions on cross examination; but, no further relief is warranted. That is, to exclude Dr. Winkler's opinions would be an act of the Court unnecessarily injecting itself into the realm of appropriate medical diagnoses and opinions. It is the jury that must decide which expert is more persuasive in his/her opinions and not the Court on a motion to strike.

### III. Order

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Strike/Exclude Defendant's Rebuttal Expert Mark L. Winkler, MD (ECF No. 48) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Dr. Winkler shall not offer testimony, and his expert report (ECF No. 55-5 at 5-12) shall be redacted to the extent Dr. Winkler opines regarding Plaintiff's alleged need for surgery.

IT IS FURTHER ORDERED that Plaintiff's Motion seeking to otherwise strike Dr. Winkler as a rebuttal expert is DENIED.

DATED this 19th day of January, 2021.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

13